# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JERELL WILSON,

      Defendant.

Case No. 22-CR-4061-LTS-KEM

**REPORT AND RECOMMENDATION**

_____

Defendant Jerell Wilson moves to dismiss the indictment for violation of his rights under the Speedy Trial Act. Doc. 64. The Government resists (Doc. 68), and Wilson filed a reply (Doc. 74). Resolution of Wilson's motion requires the court to consider the interplay between the speedy-trial exclusions for continuances, pretrial motions, competency proceedings, and transportation delays. Ultimately, I recommend **denying** the motion (Doc. 64).

## I. BACKGROUND

The grand jury returned an indictment charging Wilson on August 10, 2022. Doc. 3. On August 17, 2022, I held an initial appearance and arraignment hearing, appointing the Federal Public Defender's office to represent Wilson. Doc. 9. At the hearing, the Government moved for detention. *Id.* Wilson's detention hearing was held on August 22, 2022, at which Wilson was ordered detained. Doc. 18.

On September 15, 2022, Wilson's counsel moved for a status conference, noting Wilson had told counsel that he wanted to represent himself and that he did not want a trial continuance. Doc. 21. That same day, Wilson filed a pro se motion to discharge counsel and proceed pro se. Doc. 22. I held an ex parte hearing on the motions on September 16, 2022. Doc. 23. At the hearing, Wilson indicated concerns with the public

defender's office based on past experience and a desire to go to trial as quickly as possible; ultimately, however, he agreed to the appointment of a new lawyer, even if it meant his trial date would likely be delayed. I therefore granted the motion to discharge and appointed new counsel. *Id.*

On September 20, 2022, Wilson's new appointed counsel moved to continue trial. Docs. 25, 26. I granted the motion and found time would be excluded under the Speedy Trial Act until the new trial date on December 19 based on ends-of-justice findings. *Id.*

On September 29, 2022, Wilson filed a pro se motion to discharge counsel, requesting a lawyer who was ready to go to trial this year. Doc. 27. I held a hearing on the motion on October 5, 2022. Doc. 30. At the hearing, I found that Wilson's concerns were with the system as a whole rather than his particular appointed counsel, and I denied his motion for new counsel. *Id.*

On November 9, 2022, Wilson's counsel moved to continue trial, requesting a firm trial date in January or the first week of February 2023. Doc. 32. Wilson's counsel indicated that due to the upcoming holidays and trials in other cases, he could not effectively prepare for Wilson's trial in the next eight weeks. *Id.* On November 14, 2022, Wilson sent a letter to the court (later construed as a motion to proceed pro se). Doc. 33.

I held a hearing on the continuance motion on November 17, 2022 (as well as the request for self-representation). Doc. 37. At the hearing, Wilson's counsel stated that he had spoken with the district judge's chambers regarding trial availability and that trial could be continued to February 26, 2023, before the current judge or to a late January 2023 trial date before a different judge. The Government responded it was prepared to go to trial at any time, December, January, or February. The court stated it would grant the motion to continue and reset the trial date after consulting with the district court. The court indicated time would be excluded under the Speedy Trial Act but did not specify under which provision nor make ends-of-justice findings. Defense counsel then requested to discuss Wilson's November 14 letter to the court ex parte, as defense counsel read the

2

letter as a motion to proceed pro se. During the ex parte portion of the hearing, Wilson said that he resisted a trial continuance and that he wanted to go to trial as scheduled in December. Wilson stated he would rather go to trial without an attorney than delay trial to give his attorney adequate time to prepare. The court went through the *Faretta*[1] colloquy with Wilson and ultimately concluded it had concerns with Wilson's competency. The court indicated it would take the issue of competency and Wilson's motion to represent himself under advisement. *See* Doc. 37.

The next day, on November 18, 2022, the court ordered Wilson undergo a psychological evaluation to aid the court in making a competency determination. Docs. 39, 41. The court's order indicated it had granted defense counsel's motion to continue before learning Wilson sought to represent himself. Doc. 39. The court stated that trial would be continued until further order of the court and that Wilson's pro se motion to represent himself would be held in abeyance pending the competency determination. *Id.* The court also issued a separate order committing Wilson to the custody of the Attorney General for a thirty-day competency evaluation. Doc. 41. That order indicated "[t]he United States Marshals must transport Defendant to a suitable facility." *Id.* The court noted time would be excluded under the Speedy Trial Act from the date of the second continuance motion through the conclusion of the competency proceedings under the provision of the Speedy Trial Act that excludes competency-related delays, but that transportation-related delays in excess of ten days would be presumed unreasonable. Docs. 39, 41.

Wilson was designated to the Federal Detention Center, SeaTac (FDC-SeaTac) for the psychological evaluation (it is unclear precisely when). On November 21, JPATS[2]—the arm of the United States Marshals Service responsible for transport—received a request from this district's Marshals to arrange for Wilson's transport from Iowa to FDC-

---

[1] ***Faretta v. California***, 422 U.S. 806 (1975).

[2] The Justice Prisoner and Alien Transportation System.

SeaTac. *See* Doc. 79. JPATS finalized Wilson's route on November 29, with transport beginning on December 7, 2022, and Wilson arriving at FDC-SeaTac on December 28, 2022. Docs. 42, 46, 79. Based on the delays in transport, the Government moved on December 8, 2022, to extend the time to prepare the competency report; defense counsel resisted. Docs. 42, 43. The next day, the court denied the motion to extend as moot, as the court's original order set the deadline for the competency report based on Wilson's arrival at the designated facility. Doc. 44. The court cautioned the Government, however, of the potential consequences of taking longer than ten days to transport Wilson, noting (as it had before) that unreasonable transportation delays in excess of ten days may not be excludable under the Speedy Trial Act. *Id.*

On January 10, 2023, the Government moved for an additional fifteen days to evaluate Wilson based on the assigned psychologist traveling away from the facility during the evaluation period. Doc. 48. Defense counsel filed a resistance, noting Wilson had repeatedly expressed his desire to go to trial as soon as possible, so much so that he objected to a continuance needed by his own counsel. Doc. 49. I granted the requested extension, allowing the competency evaluation to be conducted from December 28, 2022, to February 13, 2023. Doc. 50. As my original order noted, I directed the examiner to complete the competency report within fourteen days of the evaluation period's conclusion. *Id.*

Ultimately, the psychologist at FDC-SeaTac did not need forty-five days to evaluate Wilson, given his lack of cooperation. *See* Doc. 52. The competency report was completed on February 13, 2023, and emailed to the court and the parties that day (and filed on the docket on February 14). Docs. 52, 52-3. The report does not specifically say when the evaluation period ended, but it indicates that the last time the evaluator attempted to meet with Wilson was on January 25, 2023; that a psychologist spoke with Wilson briefly on February 1, 2023, to assess his adjustment to solitary confinement, and Wilson said he wanted his forensic evaluation to end (this appears in the section outlining Wilson's medical treatment while at FDC-SeaTac, not the section

4

outlining the evaluation process); and that Wilson indicated on a February 7, 2023 phone call that the evaluator had "spoke[n] with him and told him the U.S. Marshals had been advised they could transfer him."

JPATS "received a Return Study Order Movement Request" to transport Wilson from FDC-SeaTac back to Iowa on February 21, 2023. Doc. 79. JPATS received this request through the "system"; it is unclear whether the Marshals for the Northern District of Iowa or personnel at FDC-SeaTac generated the transportation request. JPATS began transporting Wilson from FDC-SeaTac on March 1, 2023, and he returned to the district on March 24, 2023. *Id.*

On March 28, I held a competency hearing, as well as a second hearing on Wilson's motion to proceed pro se, which had remained pending during the competency evaluation and pending a competency determination. Doc. 56. I found Wilson competent to proceed to trial. Docs. 56, 58. I denied his motion to proceed pro se given his refusal to engage with the court during its required colloquy under *Faretta* and concerns about his understanding. Docs. 56, 60. At the hearing, Wilson requested the earliest possible trial setting and raised potential speedy-trial issues. Doc. 59. I reset trial for May 1, 2023. *Id.* The Government orally moved for a month-long continuance due to other scheduled trials, which I denied. Doc. 56. The minute entry from the hearing reflects my oral rulings, but I also issued follow-up written orders on March 29 (on competency and the Government's oral motion to continue) and March 30 (on the motion to proceed pro se). Docs. 58-60.

On April 5, 2023, Wilson filed the current motion to dismiss for violation of his rights under the Speedy Trial Act. Doc. 64. After it was fully briefed (Docs. 68, 74), I held an evidentiary hearing on the motion on April 26, 2023. Doc. 82. The Government submitted a declaration from JPATS assistant scheduling chief Kevin Wykert (Doc. 79), who also testified by telephone.

## II. DISCUSSION

Under the Speedy Trial Act, a defendant's trial must commence within seventy days from the date the indictment is made public or from the date of the defendant's initial appearance, whichever is later.[3] The Speedy Trial Act recognizes, however, that it is sometimes necessary to pause the seventy-day clock, and it provides for numerous "periods of delay" that are excludable from the time within which trial must commence.[4]

### A. Excludable Time Through September 20, 2022 (When Wilson First Moved to Continue)

The parties agree that some amount of time ran on the speedy-trial clock prior to the first motion to continue filed on September 20, 2022. Wilson contends thirty-three days elapsed (from August 18, the day after his initial appearance, to September 19, inclusive); the Government contends twenty-four days elapsed (from August 22, the date the court resolved the detention motion, to September 15, the date Wilson moved to discharge counsel; the Government appears to count either August 22 or September 15 as nonexcludable time).

The Speedy Trial Act excludes from the seventy-day clock "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."[5] Thus, although Wilson's initial appearance occurred on August 17, the Government is correct that the clock was paused through August 22 based on the pending detention motion.[6] Twenty-three days[7] then

---

[3] **18 U.S.C. § 3161(c)(1)**.

[4] **18 U.S.C. § 3161(h).**

[5] **18 U.S.C. § 3161(h)(1)(D).**

[6] *See United States v. Moses*, 15 F.3d 774, 777 (8th Cir. 1994) (holding that motion for detention is pretrial motion for purposes of Speedy Trial Act exclusion and that "[t]he period of excludable delay resulting from the government's motion includes both the date on which the motion was filed and the date on which the motion was decided").

[7] August 23 through September 14, inclusive.

elapsed on the speedy-trial clock before it was stopped again on September 15 based on motions filed by Wilson and his counsel. Those motions were resolved the next day (a fact the Government does not appear to realize, likely due to the motions' ex parte nature), resulting in two days of excludable time. Three days[8] passed counting toward speedy trial, then the clock stopped on September 20 when defense counsel filed the motion to continue. Therefore, all told, twenty-six days elapsed for speedy-trial purposes between Wilson's initial appearance and the first motion to continue.

### B. *Excludable Time Through December 19, 2022 (the Trial Date After the First Continuance)*

The court granted Wilson's continuance motion on September 20 and stated that time would be excluded under the Speedy Trial Act through December 19, the new trial date, based on its finding that a continuance would serve the ends of justice and outweigh the public's and Wilson's interest in a speedy trial, as it would allow new defense counsel time to review discovery and prepare for trial. The Speedy Trial Act excludes "[a]ny period of delay resulting from a continuance granted . . . at the request of the defendant or his counsel" when the court makes these ends-of-justice findings.[9] Wilson does not dispute that this provision stopped the speedy-trial clock from September 20 through November 18. He suggests, however, that when the court questioned Wilson's competency and ordered a psychological evaluation on November 18, the provisions of the Speedy Trial Act related to competency then began to govern, "trumping" the provision on continuances. Because Wilson did not arrive at FDC-SeaTac until December 28, Wilson argues that time beyond ten days from November 18 to December 28 amounts to an "unreasonable transportation delay" and is not excludable.

---

[8] September 17 through 19, inclusive.

[9] **18 U.S.C. § 3161(h)(7)(A)**.

The Speedy Trial Act excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant."[10] It also excludes "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable."[11] The Eighth Circuit has interpreted these provisions to mean that "[i]f the delay was caused by the *process* involved in arranging the evaluation, then the time is not counted" for Speedy Trial purposes, but "time that exceeds 10 days during [a defendant's] *transportation* will be counted."[12] Thus, unreasonable transportation delays incurred transporting a defendant to and from mental-competency examinations are *not* excludable under the Speedy Trial Act.[13] To read the provisions otherwise "would render [the section on unreasonable transportation delays] superfluous because [that section] specifically states that delays of more than ten days in transporting defendants to the sites of psychological examinations are presumed to be unreasonable."[14]

> [S]ection 3161(h)(1)(A) cannot be interpreted to exclude *all* periods of delay related to examinations because section 3161(h)(1)(F) places a specific limitation on the excludability of an unreasonable period of delay in transporting a defendant to the site of that *very* examination. To interpret section 3161(h)(1)(A) in such a way would render section 3161(h)(1)(F) superfluous because it would *never* be necessary to apply section

---

[10] **18 U.S.C. § 3161(h)(1)(A).**

[11] **18 U.S.C. § 3161(h)(1)(F).** To the extent that some cases suggest that the ten-day period in § 3161(h)(1)(F) does not include weekends and holidays, they relied on the pre-2009 version of Federal Rule of Criminal Procedure 45; and in any event, the Supreme Court has held that the common-law rule, which includes weekends and holidays, governs, not Rule 45. *See **United States v. Tinklenberg**,* 563 U.S. 647, 662 (2011).

[12] ***United States v. McGhee**,* 532 F.3d 733, 737-38 (8th Cir. 2008).

[13] ***Id.*** Most circuit courts agree with the Eighth Circuit's interpretation, but the Second Circuit has held otherwise. *See **United States v. Williams**,* 917 F.3d 195, 201 (3d Cir. 2019) (collecting cases).

[14] ***Williams**,* 917 F.3d at 202-03.

3161(h)(1)(F) to determine if a period of delay in transporting a defendant to a psychological examination is unreasonable and, therefore, non-excludable; section 3161(h)(1)(A) would *always* exclude such period of delay, and the limitations contained in section 3161(h)(1)(F) would be devoid of meaning.[15]

Wilson suggests that the same reasoning applies to the provision on continuances—that if time related to unreasonable transportation delays is not excluded when it overlaps with excludable time due to an ends-of-justice continuance, the provision on unreasonable transportation delays is rendered superfluous. I disagree. That provision would still apply in other instances (such as when there has not been an ends-of-justice continuance). In addition, the provision on continuances appears in a different subsection of the statute (§ 3161(h)(7)) than the provisions on competency proceedings and transportation delays, which appear together in the same subsection (§ 3161(h)(1)). Courts have therefore held that the reasonableness of transportation delays are irrelevant if the time period is also excluded by an ends-of-justice continuance.[16] To retroactively count previously excluded time in speedy-trial calculations "would 'lay a trap' for courts attempting to accommodate pretrial requests for a continuance," because "[a] defendant could argue long after the fact that . . . . a shorter and more 'specific' exclusion applied rather than the one apparent to the Court at the time."[17] Accordingly, time is excluded through December 19

---

[15] *Id.*

[16] *United States v. Patterson*, 872 F.3d 426, 433 (7th Cir. 2017); *United States v. Conlan*, 786 F.3d 380, 393 (5th Cir. 2015); *United States v. Mann*, 536 F. Supp. 3d 173, 178 (W.D. Mich. 2021); *United States v. Hawkins*, No. 2:11-CR-04016-BCW, 2014 WL 5342866, at *7 (W.D. Mo. Oct. 20, 2014).

[17] *Mann*, 536 F. Supp. 3d at 178.

(inclusive)[18] by nature of the court's ends-of-justice continuance, regardless of any transportation delays.

### C. Excludable Time Through December 28, 2022 (When Wilson Arrived at FDC-SeaTac)

The Marshals began transporting Wilson to FDC-SeaTac on December 7, 2022, but Wilson did not arrive at that facility until twenty-one days later, on December 28, 2022. Even though it took longer than ten days to transport Wilson, the Government disputes that the time between December 20 and December 28 constitutes an unreasonable transportation delay.

First, the Government argues that the court did not issue a transportation order, noting that the ten days to transport under § 3161(h)(1)(F) runs "from the date [of] . . . an order directing such transportation." The court's November 18, 2022 order stated: "The United States Marshal must transport Defendant to a suitable facility." Doc. 41. The order then stated in a footnote that transportation delays in excess of ten days would be presumed unreasonable. *Id.* This constituted a transportation order for purposes of § 3161(h)(1)(F).

The Government argues that a transportation order must direct transport to a specific facility. The Government notes that in *McGhee*, the Eighth Circuit counted the time to transport the defendant to a medical facility from the date of the district court's order "directing transportation to Florida," rather than from the date of the district court's order "committ[ing] Defendant to the Attorney General's custody."[19] But it does not appear the district court's first order in *McGhee* directed the Marshals to transport the

---

[18] *See, e.g.*, **United States v. Montenegro**, No. 1:19-CR-00007-NONE-SKO, 2021 WL 5139650, at *3 (E.D. Cal. Nov. 3, 2021) (excluding time for Speedy Trial Act purposes due to ends-of-justice continuance inclusive of new trial date).

[19] 532 F.3d at 736, 738.

defendant (unlike my order here). The Sixth Circuit has similarly distinguished *McGhee* and rejected the Government's precise argument here:

> The government's reading would require either a second judicial order or a separate agency order to trigger § 3161(h)(1)(F). As to the concept of a second judicial order, a court *might* choose to issue one order directing an evaluation, then, once the government has picked a facility for the defendant's evaluation, issue another order directing the government to transport the defendant there [as in *McGhee*]—an approach that might eliminate the countable-delay problems encountered here. But we do not read the statute to require a second order to begin the Speedy Trial clock. Here, the court's first order covered evaluation *and* transportation, which satisfies the requirement of an "order directing . . . transportation." And it would be strange to construe the statute to contain a start date that begins, if at all, only when courts do something—issue a second judicial order— that, the government tells us, they rarely do.[20]

The Government argues that general transportation orders prevent the court from excluding time related to the process of arranging a competency evaluation. I recognize that delay attributable to awaiting designation to a facility or to a lack of bedspace is excludable under the Speedy Trial Act (as this delay is attributable to the competency process, rather than to transportation).[21] On the other hand, transportation delays include the time it takes the Marshals to transfer the defendant from the district to the facility and vice versa, as well as time the defendant spends awaiting transportation after a transportation order.[22] This is consistent with Congress's intent in excluding

---

[20] *United States v. Turner*, 602 F.3d 778, 784-85 (6th Cir. 2010).

[21] *See United States v. Tinklenberg*, 579 F.3d 589, 591, 597 (6th Cir. 2009) (excluding time between district court's order for evaluation and date defendant was designated to facility, but not time in excess of ten days it took to transport defendant to facility thereafter), *aff'd on other grounds*, 563 U.S. 647; *see also Conlan*, 786 F.3d at 393 & n.38 (noting district court excluded time due to lack of bed space but declining to address this holding).

[22] *See Williams*, 917 F.3d at 203-04 (holding that when court directed transportation to competency evaluation on June 11, Marshals received notice of that order on July 9, and defendant arrived at the facility on July 29, time beyond ten days between June 11 and July 29 was not excludable for purposes of the Speedy Trial Act; the court noted the clear terms of the statute stated the ten-day period for transport ran from the time of the court's transportation order, not from the time the Marshals received notice of the order or actually began transport);

unreasonable transportation delays—as the Ninth Circuit has noted, the legislative history reflects that Congress was concerned with "delays to accommodate the [Marshals] in [their] desire to effect economical transportation of prisoners in larger groups."[23]

The statute specifically states that time in excess of ten days after a transportation order is "presumed . . . unreasonable." But nothing prevents the Government from presenting evidence to rebut this presumption and from demonstrating that the delay related to the competency process, rather than to transportation. The date the defendant was designated to a specific facility, whether that facility lacked bed space, and when the Marshals actually began the transportation process is all information in the Government's possession—not Wilson's, and not the court's. Thus, the court finds that time "in excess of ten days from . . . an order directing . . . transportation" is presumed unreasonable[24] and puts the onus on the Government to rebut this presumption of unreasonableness (such as by demonstrating delays in designation).[25]

In any event, here, the delay from December 19 through December 28 was *not* related to the competency process—Wilson had been designated to a facility by December

---

*Tinklenberg*, 579 F.3d at 591, 597; *McGhee*, 532 F.3d at 738 (excluding as unreasonable transportation delays the time in excess of ten days from January 4 (when the Bureau of Prisons "was notified that [d]efendant was ready to be taken back to [the district]" after his competency evaluation) to January 24 (when defendant returned to the district), even though the Marshals did not initiate transport until January 9).

I recognize that the Eighth Circuit in *United States v. Walker* characterized *McGhee* as holding "that the time periods while the defendant was awaiting transportation . . . were part of the competency proceedings" and therefore excludable. 840 F.3d 477, 485 (8th Cir. 2016). But the court in *McGhee* counted the time when the defendant was awaiting transportation from the Bureau of Prisons as transportation delay. *McGhee*, 532 F.3d at 738. *Walker*'s characterization of *McGhee* is dicta, and *Walker* can be distinguished as not involving a transportation order (it appears the court ordered a competency evaluation without specifically directing transport).

[23] *United States v. Taylor*, 821 F.2d 1377, 1384 & n.10 (9th Cir. 1987), *rev'd on other grounds,* 487 U.S. 326 (1988).

[24] **18 U.S.C. § 3161(h)(1)(F)**.

[25] *See, e.g.*, *Turner*, 602 F.3d at 783 (holding that the government's "vague[]" explanation for the delay—the "difficulty suffered by the facility and by the [Marshals] in effectuating a timely

7, and the Marshals initiated transport at that time. The Marshals' transportation process itself took twenty-one days. The Government argues that these delays are reasonable because "at certain locations, only two transports are scheduled a month to certain facilities, in particular, coming from Sioux City, Iowa, to the West Coast." Doc. 68 at 8; *see also* Doc. 79. But "[o]rdinary institutionalized delay is not an excuse"; there must be "some extraordinary event [that] occurred in the case to make compliance with the directions of Congress unfeasible."[26] Delays due to the Marshals' budgetary constraints[27] or "desire to effect economical transportation of prisoners in larger groups"[28] does not rebut the presumption of unreasonableness.[29]

The Government also asserts that even if the Marshals unreasonably delayed transporting Wilson, the time is excludable because a pretrial motion was pending. Wilson filed what I later construed as a motion to proceed pro se on November 14, 2022. I held an ex parte hearing on the motion on November 18, 2022, during which time I

---

evaluation and transportation to and from the facility"—did not rebut the presumption of unreasonableness); *United States v. Noone*, 913 F.2d 20, 25-26 (1st Cir. 1990) (excluding time in excess of ten days from date of court's order for competency evaluation because "the government offers no explanation of the transportation delay" and has therefore "failed to rebut the presumption of nonexcludability"); *see also United States v. Ovsak*, No. 4:10CR209CDP(MLM), 2010 WL 4923328, at *2 (E.D. Mo. Oct. 13, 2010) ("Even if waiting to be transported in excess of 10 days is considered presumptively unreasonable, the presumption can be rebutted by the unavailability of a facility for the examination . . . . because it involves *proceedings* to determine mental competency"), *report and recommendation adopted,* 2010 WL 4922506 (Nov. 29, 2010).

[26] *United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990) (quoting *United States v. Jervey*, 630 F. Supp. 695, 697 (S.D.N.Y. 1986)); *accord Noone*, 913 F.2d at 26.

[27] *Castle*, 906 F.2d at 137-38.

[28] *Taylor*, 821 F.2d at 1384.

[29] *See also United States v. Phillips*, No. 7:17-cr-00001, 2018 WL 1885492, at *3 (W.D. Va. Apr. 19, 2018) (holding that "[d]elays resulting from the [Marshals] using fixed routes to transport prisoners" did not rebut presumption of unreasonableness); *but see Ovsak*, 2010 WL 4923328, at *2 (noting that "[e]ven if waiting to be transported in excess of 10 days is considered presumptively unreasonable, the presumption can be rebutted by . . . the shortage of flights due to budgetary constraints," but citing no caselaw to support this proposition).

questioned Wilson's competency. I stated during the hearing that I was taking the motion under advisement and ultimately issued an order indicating it would be held in abeyance pending Wilson's competency evaluation.

The Speedy Trial Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."[30] It also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."[31] Read together, the Eighth Circuit has held:

> [These provisions] mean that when a pretrial motion requires a hearing, the excludable period runs from the filing of the motions to the date of the hearing, or until the date when the parties have submitted any additional materials requested by the court. When the motions require no hearing, the excludable period runs from the date of filing until the court receives all the parties' submissions regarding the motions. Following this period . . . , the Act will allow exclusion of up to 30 more days for the court to consider the motions.[32]

Here, the motion to proceed pro se was fully submitted[33] on November 18, when the court held an ex parte hearing on the motion. The thirty days to consider and rule

---

[30] **18 U.S.C. § 3161(h)(1)(D)**.

[31] **18 U.S.C. § 3161(h)(1)(H)**.

[32] *United States v. Long*, 900 F.2d 1270, 1274 (8th Cir. 1990) (citation omitted); *accord **United States v. DeGarmo***, 450 F.3d 360, 364 (8th Cir. 2006).

[33] After finding Wilson competent to proceed in March 2023, the court once again took up Wilson's request to represent himself. Doc. 56. An argument could be made that for this reason, the motion to proceed pro se was not fully submitted on November 18, 2022. This tends to strain reason, however, because the court would have resolved the motion on November 18 but for having concerns about Wilson's competency, and for that reason, declined to fully resolve the motion until the court was certain Wilson was competent to proceed.

on the motion had expired on December 19; thus, the pretrial-motions exclusion does not apply to the time from December 20 to December 28.[34]

At the hearing for the current motion, the Government pointed to an additional pending pretrial motion: the motion for competency hearing. In sua sponte raising the issue of competency, I directed the Clerk of Court to "docket the Court's oral motion for [a] competency" hearing, which I held in abeyance pending the thirty-day competency evaluation. *See* Docs. 39, 40. This "motion" remained pending until the court received the competency report and Wilson returned from FDC-SeaTac. When the issue of competency is raised (whether by counsel or the court sua sponte), it is this court's practice to grant the request for a thirty-day evaluation and hold in abeyance the request for a competency hearing. In this way, the competency motion remains pending on the court's motion list so that the case does not get "lost."

I do not find that a pending motion for a competency evaluation renders unreasonable transportation delays nonexcludable.[35] The pretrial-motions exclusion appears in the same subsection of the Speedy Trial Act as the transportation-delays exclusion (§ 3161(h)(1)). As with the competency-proceedings exclusion, if the pretrial-motions exclusion always "trumped" the unreasonable-transportation exclusion, the latter would be rendered superfluous—as in this court at least, a motion for a competency hearing always remains pending during a defendant's transport to and from a competency evaluation. This is not to say that the pretrial-motions exclusion would not apply in some instances to exclude time during an unreasonable transportation delay. But there is a distinction between pretrial motions that the court can rule on while the defendant is

---

[34] *See also* **United States v. Aldaco**, 477 F.3d 1008, 1018 (8th Cir. 2007) (assuming without deciding that when court held motion in abeyance, Speedy Trial Act excluded thirty days from the time the motion was ripe, rather than entire time period court delayed ruling on motion).

[35] In addition, here, the "motion" is not really a pretrial motion at all since it was not filed by either party and instead docketed at the court's direction.

incompetent (or may be incompetent)[36] and those that require a hearing with the (competent) defendant present.[37] Here, the "motion" for a competency hearing could not be ruled upon until receipt of the competency evaluation and hearing with Wilson present.[38] Thus, the motion would necessarily remain pending during the same time

---

[36] *Cf. United States v. Zabawa*, 719 F.3d 555, 562 (6th Cir. 2013) (rejecting defendant's argument that "18 transportation days" counted toward speedy trial because "a motion by [defendant] was pending during all 18 of those days, which means they are excluded under another provision of the [Speedy Trial] Act"; the underlying district court report and recommendation shows that the pending motion was counsel's motion to withdraw, which the court granted prior to receiving the competency report and finding defendant competent, *see* No. CR 04-80844, 2010 WL 3075044, at *4 (E.D. Mich. July 16, 2010)); *McGhee*, 532 F.3d at 737 n.2 (noting that in addition to competency-proceedings exclusion, pretrial-motions exclusion applied to ten days between when defendant filed motion to withdraw his request for a competency evaluation and when court denied the motion).

[37] *See United States v. Hernandez-Castro*, No. 4:21CR3079, 2021 WL 5868203, at *2-3 (D. Neb. Dec. 10, 2021) (noting that the court could not determine in advance how much time would be excluded for competency proceedings, as unreasonable transportation delays were not excludable, despite defendant's pending motion for a competency hearing); *United States v. Phinizy*, No. CR 18-0323 (ABJ), 2019 WL 2570038, at *2 (D.D.C. June 21, 2019) (holding that unreasonable transportation delays would not be excluded under Speedy Trial Act, despite pending detention motion, which required a hearing with defendant present); *but see United States v. Beler*, No. 19-mj-100 (BAH), 2019 WL 5789747, at *9, *11 (D.D.C. Nov. 6, 2019) (holding that time during which defendant underwent competency evaluation was excludable based on pending detention motion requiring a hearing, despite acknowledging that this holding would "insulate lengthy [transportation] delays from [Speedy Trial Act] scrutiny" and "may seem to run contrary to the [Speedy Trial Act's] central purpose"); *United States v. Walters*, No. 3:07-CR-0589-JAJ, 2009 WL 684743, at *3-4 (S.D. Iowa Mar. 12, 2009) (when defendant filed a motion requesting a competency evaluation *and* hearing, excluding delays transporting defendant to and from competency evaluation, despite their unreasonableness, based on pending motion for competency hearing).

[38] *See* **18 U.S.C. §§ 4241, 4247(d)** (government competency-determination hearings and indicating the defendant must be given an opportunity to testify and present evidence at the hearing); *United States v. Day*, 949 F.2d 973, 981-82 (8th Cir. 1991) (noting defendant's presence required at hearing to determine competency so defendant has "the opportunity to be heard, to offer evidence, and to test the evidence"), *rev'd on other grounds*; *see also* Fed. R. Crim. P. 43 (not listing competency proceeding as circumstance a defendant need not be present for).

period covered by the competency-proceedings exclusion. The better reading of the statute is that the exclusion on unreasonable transportation delays still applies.

One final matter. Neither party addresses the November 2022 continuance. In November 2022, defense counsel requested a trial continuance to January or February 2023 to give him adequate time to prepare for trial. Wilson objected and requested to proceed to trial in December 2022 as scheduled without the benefit of counsel. I ultimately did not rule on Wilson's request to represent himself because I questioned Wilson's competency. And although I granted the continuance request, I did not make ends-of-justice findings, instead stating that the time would be excluded under the competency-proceedings exclusion.

A defendant's "'opposition to his counsel's request for a continuance,' even if timely asserted, 'does not prevent that time from being excluded from the speedy trial calculation.'"[39] But for the continuance exclusion to apply, the court must find that the continuance serves the ends of justice and outweighs the defendant's interest in a speedy trial.[40] These findings may be "only in the judge's mind" at the time of the continuance, but "at the very least[,] . . . [they] must be put on the record by the time a district court rules on a defendant's motion to dismiss" for speedy-trial violations.[41]

Here, I did not exclude time under the continuance exclusion because I did not find that the ends of justice would necessarily be served by the continuance. If it had been clear at the time of the continuance that Wilson would have proceeded to trial represented by counsel, then I likely would have found the continuance served the ends of justice based on defense counsel's representations. But at that time, it was undecided whether Wilson would be allowed to proceed pro se—and if he ultimately represented

---

[39] **United States v. Harlan**, 960 F.3d 1089, 1093 (8th Cir. 2020) (quoting **United States v. Herbst**, 666 F.3d 504, 510 (8th Cir. 2012)).

[40] See **Zedner v. United States**, 547 U.S. 489, 506-07 (2006).

[41] **Id.**

Case 5:22-cr-04061-LTS-KEM    Document 84    Filed 05/02/23    Page 17 of 23

himself, the continuance requested by counsel for trial preparation would not be necessary (nor serve the ends of justice). Thus, I determined that the time was excludable under § 3161(h)(1)(A) governing competency proceedings, but not under § 3161(h)(7)(A) governing continuances.

In sum, the transportation-delays exclusion governs the time from December 20 through December 28, and no other exclusions "trump" to render irrelevant the unreasonable transportation delay. As the Marshals began transporting Wilson to FDC-SeaTac on December 7, he should have arrived (at latest) within ten days, by December 16. Instead, he arrived on December 28. The time from December 20 through December 28 (inclusive)[42] counts toward speedy trial, as it constitutes an unreasonable transportation delay. Thus, by the time of Wilson's arrival at FDC-SeaTac, nine additional days had elapsed on the speedy-trial clock (and thirty-five days total).

### D. Excludable Time Through March 28, 2023 (the Date of the Competency Hearing)

The parties agree that the time to conduct the competency evaluation and determine competency is excluded under § 3161(h)(1)(A) (as delay related to competency proceedings). They disagree on the amount of nonexcludable time attributable to transportation delays in transporting Wilson back to the district from FDC-SeaTac.

Based on the evidence at the hearing, Wilson argues that time attributable to transportation ran from February 14, 2023—the day after FDC-SeaTac completed the competency report and the court received it—through March 24, 2023, when Wilson returned to the district. Wilson argues that once the report was completed, there was no reason for him to be at FDC-SeaTac related to competency; instead, he remained there while the Bureau of Prisons, Marshals for the Northern District of Iowa, and JPATS

---

[42] *See McGhee*, 532 F.3d at 739 (counting day defendant arrived toward unreasonable transportation delay).

arranged for his transportation. Thus, he argues the delay "result[s] from transportation," rather than from the competency proceedings. At the very least, Wilson argues that the time to transport Wilson began on February 21, 2023, when JPATS received the transportation request.

"[T]he statute clearly starts the clock on the date of an order directing transportation."[43] In *McGhee*, the Eighth Circuit held that the date "the Bureau of Prisons was notified that [the defendant] was ready to return to" the district constituted the date of the order directing transportation.[44] Here, the date of the transportation order appears to be February 21, the date JPATS received the Return Study Order Movement Request, directing JPATS to arrange Wilson's transport from FDC-SeaTac back to this district.[45] The evidence does not support that the Marshals were directed before that time to begin transport. The court received the competency report on February 13, and it was filed on February 14, but there is no evidence the Marshals received the completed evaluation at that time. And although the competency report indicates Wilson said on February 7 that the Marshals had been advised they could transfer him, no other evidence supports that

---

[43] *McGhee*, 532 F.3d at 738.

[44] *Id.*

[45] *See id.*; *see also United States v. Garrett*, 45 F.3d 1135, 1140 & n.5 (7th Cir. 1995) (holding that ten-day time period to transport back to the district ran from "the date upon which the defendant was authorized for transportation by the appropriate prison official," which the court found was "the date on which the Warden indicated to the district court that [the defendant] was ready for transportation" and that the Marshals had been contacted); *Phillips*, 2018 WL 1885492, at *1 & n.2 (rejecting the government's argument that no return transportation order existed when competency report to the court was accompanied by a letter from the warden indicating that the Marshals had been contacted to transport the defendant back to the district; and four days later, the facility faxed the Marshals stating the defendant was ready to be transported); *United States v. Clifton*, 756 F. Supp. 2d 773, 779 (S.D. Miss. 2010) (holding that ten days to transport back to the district ran from "the day after the . . . notice to the Marshal Service from . . . FDC Miami, advising that [the defendant's] evaluation was completed and directing the Marshal Service to return the defendant to the [district] 'as soon as possible'"); *United States v. Lewis*, 484 F. Supp. 2d 380, 383, 389 (W.D. Pa. 2007) (finding transportation underway no later than the date the Marshals Service made request to JPATS to return defendant to the district).

the Marshals had received notice by this time (the evidence definitively shows JPATS had not received notice; and there is no evidence regarding when, if ever, the Marshals for this district received notice).

The transportation order issued February 21, the Marshals began transporting Wilson on March 1, and he arrived back in the district on March 24. Ten days from the February 21 transportation order are presumed reasonable, meaning Wilson should have arrived back in the district by March 2. The Government has not rebutted the presumption of unreasonableness for the transportation delay from March 3 through March 24,[46] and those twenty-two days therefore count toward the speedy-trial clock.

### E. Excludable Time Through April 5, 2023 (the Date Wilson Filed the Motion to Dismiss) and Thereafter

The court held the competency hearing on March 28, 2023, and ruled orally on all pending motions. The court issued written orders on March 29 and 30. The Government's arguments presume that the pretrial-motions and competency-proceedings exclusions apply through the date of the court's written rulings, rather than the court's oral rulings.

The pretrial-motions exclusion applies "through the conclusion of the hearing on, or other prompt disposition of," the pretrial motion, as well as while "any proceeding concerning defendant is actually under advisement by the court."[47] I have found very few cases addressing whether a court's oral ruling disposes of the pretrial motion or whether time is instead excluded through the time of the court's written ruling. And those that do address this issue point in different directions.

---

[46] The Government raises the same general arguments about the Marshals' system of transporting prisoners that I have already found insufficient.

[47] **18 U.S.C. § 3161(h)(1)(D), (H)**.

A district court in the Eighth Circuit has held that the pretrial-motions exclusion applies to "the nine days between [a magistrate judge's] oral detention order and the date upon which the written order was filed."[48] The court in that case relied upon a case from the same district in which the court had excluded the time between the detention hearing and written detention order (without analyzing the issue).[49] The court also reasoned that in the specific context of detention, time should be excluded until the written order issues, since written detention orders are mandated by statute.[50]

On the other hand, the Fourth Circuit has stated that "a court 'finally disposes of the motion'" for purposes of the pretrial-motions exclusion "when either (1) the clerk of the court officially files the judge's written decision, or (2) the judge renders his decision orally in open court, whichever is earlier."[51] The court cited an Eleventh Circuit case noting the general rule that "an order granted on a motion should, in order to become complete and effective, be entered, filed, or made a part of the minutes or record of the court."[52]

In addition, the Second Circuit (in addressing other issues) has favorably cited the following non-binding guidance by the Judicial Conference of the United States:

> The ending date [for the motions-under-advisement exclusion] is the earliest of (1) the date the judge's decision is filed, (2) the date the judge renders his decision orally in open court, or (3) the expiration of the 30-day maximum period.[53]

---

[48] *United States v. Preston*, No. 11-CR-129 DWF/SER, 2011 WL 2960261, at *7-8 (D. Minn. June 8, 2011), *report and recommendation adopted in relevant part*, 2011 WL 2960260 (July 21, 2011), *rev'd on other grounds,* 685 F.3d 685 (8th Cir. 2012).

[49] *See United States v. Leon*, No. 97-CR-124(14)(JMR/AJB), 2008 WL 3906762, at *2 (D. Minn. Aug. 25, 2008).

[50] *Preston*, 2011 WL 2960261, at *9.

[51] *United States v. Parker*, 30 F.3d 542, 546 n.1 (4th Cir. 1994).

[52] *United States v. Martinez*, 749 F.2d 623, 625 (11th Cir. 1984) (quoting **60 C.J.S. *Motions and Orders* § 59(1)** (1969)) (analyzing whether date of written order or date of filing controlled for purposes of pretrial-motions exclusion and holding date of filing controlled).

[53] *United States v. Bufalino*, 683 F.2d 639, 644 (2d Cir. 1982) (quoting **Guidelines to the Administration of the Speedy Trial Act of 1979, as Amended** 42-43 (1981)).

District courts in the Second Circuit have excluded time through the issuance of the court's oral ruling, rather than the written ruling.[54]

Here, I find that the pending motions were "actually under advisement" through the date of the hearing, when I ruled on the motions orally from the bench, as reflected in the minutes (Doc. 56). Thus, I do not find that March 29 and March 30 are excludable based on my outstanding written follow-up orders.

The competency proceedings concluded with the hearing on March 28, and the speedy-trial clock started running again on March 29. The parties agree that the clock stopped again on April 5, 2023, when Wilson filed the motion to dismiss. Thus, seven days[55] elapsed on the speedy-trial clock.

The speedy-trial clock continued to be stopped until I held a hearing on the motion to dismiss on April 26, 2023 (§ 3161(h)(1)(D)) and for up to thirty days thereafter while I took the motion under advisement (§ 3161(h)(1)(H)). It will remain stopped during the pendency of the objection period to the report and recommendation and for up to thirty days thereafter while the district court rules on the objections (or lack thereof).[56]

## III. CONCLUSION

All told, I calculate that sixty-four days have elapsed on the speedy-trial clock. I therefore recommend **denying** the motion to dismiss (Doc. 64).

**In light of the pending trial date, the court finds the standard time for objections and responses should be shortened.** Objections to this Report and

---

[54] *See United States v. Dunnigan*, No. 17-CR-119-A, 2020 WL 4043606, at *4 (W.D.N.Y. July 17, 2020) (excluding time through court's oral ruling on motion to suppress, rather than through issuance of written ruling two days later); *United States v. Oberoi*, 295 F. Supp. 2d 286, 296-97 (W.D.N.Y. 2003) (excluding time through court's oral ruling on detention motion, rather than through court's issuance of written decision five days later), *aff'd*, 547 F.3d 436, 455 (2d Cir. 2008), *cert. granted, judgment vacated*, 559 U.S. 999 (2010).

[55] March 29 through April 4, 2023, inclusive.

[56] *See Long*, 900 F.2d at 1275-76.

Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed **within seven days** of the service of a copy of this Report and Recommendation; any response to the objections must be filed **within five days** after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[57] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[58] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[59]

**DATED** May 2, 2023.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[57] **LCrR 59**.

[58] *See* **Fed. R. Crim. P. 59**.

[59] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

23